VILLAGE OF REED CITY v. REED CITY VENEER & PANEL WORKS.

1. MUNICIPAL CORPORATIONS— CONTRACTS— RATIFICATION—VALIDITY.

A village that enters into an invalid contract to pay a bonus to a manufacturing concern executed by its finance committee in its name, without corporate action, is not bound by the agreement.

2. SAME—EQUITY—TRACING FUNDS.

A bill in equity lies to pursue funds of a municipal corporation

unlawfully paid as a bonus to a manufacturing corporation, by the purchase of land and the gift of it and of money to the company, the complainant not seeking to enforce the contract or recover for its breach, but to follow the funds into the real property and into bank deposits created by payment of a fire insurance loss, on a part of the realty.

3. SAME—EQUITY—CLEAN HANDS.
  Relief is not barred by the maxim that he who comes into equity must come with clean hands.

Appeal from Osceola; Lamb, J., presiding. Submitted April 6, 1911. (Docket No. 30.) Decided May 8, 1911.

Bill by the village of Reed City against the Reed City Veneer & Panel Works, Charles A. Withey, Fred S. Torrey, and the First National Bank of Reed City to enforce a resulting trust. From a decree overruling a demurrer to the bill of complaint, defendants appeal. Affirmed.

*B. N. Savidge*, for complainant.

*Howard F. Withey*, for defendants.

It is charged in the bill of complaint that May 24, 1907, L. G. Hammond and C. J. Fleischhauer, representing themselves as the finance committee of the village of Reed City, Mich., executed with the Reed City Veneer & Panel Works, the other party thereto, a contract in writing (the party of the first part in said contract being recited to be the village of Reed City, Mich.), by the terms of which the party of the first part agreed to purchase certain property in the village and erect buildings thereon in accordance with plans and specifications to be furnished by the second party, at an aggregate cost to said first party of $10,000, and to execute a warranty deed of said property and deposit it with the First National Bank of Reed City, to be delivered to the second party upon the performance by it of certain covenants recited in the con-

tract.  The second party agreed to occupy the premises and the buildings thereon, and those to be erected, as a veneer and panel works, and to manufacture such work for five years, employing continuously not less than 40 laborers, exclusive of officers and stockholders, with an average pay roll of $20,000 a year.  It was mutually agreed that, upon the full performance of its said covenants and agreements by said second party, the said deed should be delivered to it, and, if the said second party desired the deed before the full performance of its covenants, it was to be delivered upon the payment in cash to the first party of a sum of money computed at the rate of $2,000 per annum for whatever remained of the five-year period. The object of this contract was to give to the defendant, the party of the second part, $10,000 as a bonus without any legal consideration.

The village purchased and acquired title to the real estate which it was contemplated it should purchase, and the title stands now in the village of Reed City.  It does not appear whether a deed of the property was executed by the village to the defendant.  The village paid for the real estate $4,000 out of the funds of the village.  Subsequent to the making of said contract, the defendant concluded that it would need a larger and more expensive building than had been contemplated, and undertook to construct such a building, the city advancing to it $6,000 out of its funds for that purpose, which sum, and a further unknown sum contributed by the defendant, was actually expended in the construction of the building on said land.  After the building was completed, boilers, engines, and machinery were set up therein and permanently attached.  The defendant took possession, and for some six months, and until about February 8, 1909, used the same in its business.

The defendant insured the property for $5,000, the policy providing that, in the event of loss or damage by fire, the loss should be payable to the complainant as its contract interest might appear.  While this policy was in force,

and on February 8, 1909, the main factory building was destroyed by fire and another building and the machinery damaged. The insurance company adjusted the loss at the sum of $4,563.58, and delivered a draft for that sum to the defendant, payable to the order of the defendant and the complainant. The draft was deposited in the bank and an interest-bearing certificate of deposit issued in its place, payable as the draft had been payable. By direction of the common council, the president of the village and the village attorney demanded of the defendant the certificate of deposit, or the money represented by it, and possession of said premises, and these demands were refused. The defendant is insolvent, and has been for more than a year.

It denies the right of the village to the proceeds of the insurance, or any part thereof. It has made no use of the premises for about a year, and has forfeited all rights under the contract, if the same was ever valid. It is prayed that the validity of the contract, the right of the complainant to the boilers, engines, etc., permanently attached to said real estate, and the buildings and additions thereon, and to the proceeds of the fire insurance policy, be determined, that the defendant be required to properly indorse the certificate of deposit and deliver the same to the complainant, and pay to it the difference between the amount of said certificate and the sum of $6,000, with interest. A temporary injunction was prayed for and was issued. It is assumed, although the fact is not made very clear by the bill of complaint, that the Reed City Veneer & Panel Works, a corporation, Charles A. Withey, Fred S. Torrey, and the First National Bank of Reed City, are made defendants. They demurred to the bill, and for grounds of demurrer say:

"(1) It appears from the allegations of said bill of complaint that the execution of the written contract, referred to in paragraph 1 of said bill, by the officers of the village therein described, the purchase of the property and moneys advanced for the construction of buildings thereon,

described in paragraphs 2 and 3 of said bill, the procurement of insurance as set forth in said bill and all other dealings had by said village with said Reed City Veneer & Panel Works in pursuance of said contract, and matters in said bill stated, were *ultra vires* the powers of said village and the officers and representatives thereof, in direct violation of the law, and therefore null and void.

"(2) That whether said L. G. Hammond and C. J. Fleischhauer were officers of the complainant or authorized by it or not, said complainant adopted and took advantage of what they did in the premises, and is estopped from denying their authority."

The demurrer was overruled, and the defendants have appealed.

OSTRANDER, C. J. (*after stating the facts*). In the brief for appellants, the contentions are stated as follows:

"*First.* The contract, from the effect of whose partial performance relief is sought, was *ultra vires* the general powers of the complainant, and therefore void for all purposes.

"*Second.* The contract was *malum in se*, immoral in its purpose and tendencies, and a flagrant violation of the principles of public policy, and therefore void *ab initio*, entirely aside from and independent of the doctrine of *ultra vires.*

"*Third.* The equitable maxim that 'he who comes into a court of equity must come with clean hands' constitutes a bar to the relief sought."

The village upon this record is not a party to the contract. Therefore, no corporate action is involved.

It is agreed that it had no power to enter into such a contract. Therefore it could not be bound as by a ratification of it.

The argument for appellants appears to proceed according to the theory that complainant seeks in this proceeding to enforce—to rely upon—the contract, and perhaps a breach of it. No such thing is apparent from the bill of complaint. On the contrary, the theory of the bill appears to be that the village of Reed City is entitled to

pursue and reclaim money unlawfully taken from the treasury of the village and traced into the real estate described in the bill and into the bank deposit. We have no doubt that it may do this, and the jurisdiction of a court of equity in this behalf is not challenged.

The order overruling the demurrer is affirmed, with costs to appellee.

BIRD, HOOKER, MOORE, and MCALVAY, JJ., concurred.